Marshall, C. J.
This is a suit in mandamus, filed in this court under its original jurisdiction, the relator being a contractor, to whom was awarded the contract for the construction of a certain highway in Jackson county. It is sought to compel the director of highways and public works to sign, execute, and enter into said contract on behalf of the state of Ohio. The proposed road improvement involved many separate legislative proceedings by reason of the fact that it was proposed to meet the cost thereof by a contribution from the state of Ohio, the county of Jackson, two townships in Jackson county in which the improvement is situated, and, finally, by assessment levied against certain benefited abutting property owners. The petition alleges in detail all the administrative and gwasi-legislative steps which have been taken in bringing the *613 proceedings to the point of signing, executing and delivering the contract on behalf of the state of Ohio.
It is not questioned by the defendant that all of the successive steps have been fully complied with, and it is conceded that the director of highways and public works is the proper official to execute the contract on behalf of the state. The petition even alleges a willingness on the part of the director of highways and public works to execute the contract, and that he refuses to do so only on the ground that he is not authorized so to do unless and until the same is approved by the director of finance of the state of Ohio. The petition further alleges a communication from the director of finance to the director of highways, stating that approval is withheld for the reason that he does “not regard it as an appropriate or desirable contract for the state to enter into.”
The proceedings had all been completed and the contract was presented to the director of highways for his signature on February 6, 1923, and almost immediately thereafter the contract was presented to the director of finance for his approval and remained in his possession until April 13, 1923, when such approval was refused.
The defendant has demurred to the petition, and the sole question presented for determination by the demurrer is whether or not, after compliance with all other statutory preliminary requirements, the highway department may lawfully refuse to enter into a contract for the improvement of a highway, on the ground of the want of approval of the finance department. The demurrer of course admits all *614 the well-pleaded allegations of fact contained in the petition.
This question is purely one of statutory construction. The inquiry is as to the power and authority of each of the aforesaid departments of the administrative branch of the government, to what extent each is dependent upon the other, and to what extent, if at all, the finance department is authorized to control the policy of the highway department in the matter of state aid in the construction of highways throughout the state.
The Administrative Code became effective July 1, 1921, and in the first section of that enactment (Section 154-1, General Code; 109 Ohio Laws, p. 105) it is provided: “The administrative functions of the state are organized as provided in this chapter.” Clearly it was the legislative intent that ad of the administrative functions of the state government then existing should thereafter be co-ordinated according to the elaborate plans therein provided. The principle of division of powers of government into branches is not new in this country. That principle even antedates the federal Constitution, because history tells that the state of Massachusetts declared for that principle several years before the federal Constitution was adopted. It is elementary that the purpose sought to be served by such division was to create a system of checks and balances. It is equally elementary that it was never intended to destroy all independent action on the part of each of the branches, nor to place it in the power of any one branch to defeat the performance of the essential functions of any of the others. If such a purpose should be put into execution, it requires no logic *615 to show that the one branch having such power would completely submerge any and all of the other branches over which it might exercise such power. Each of the branches has certain duties to discharge, and the head of each department is burdened with certain responsibilities. The duties of each relate to separate and distinct functions, each requiring certain technical skill, knowledge, experience and training not common to all the others. In the early history of the Union it was found very difficult to draw a distinct line of demarcation between the dependence and independence of the several branches of the federal government, and these difficulties gave rise to some of the most bitter judicial controversies to be found in the decisions of the federal Supreme Court. This present controversy makes it clearly apparent that the division of the administrative functions of our state government into eight different departments is not entirely free from the same difficulty.
The Administrative Code has a wealth of detail in defining the functions of the several branches and the duties of the heads of those departments, and yet, as- might have been expected, it has developed that some difficulties exist which must be adjusted by judicial determination. This controversy is the first, but it is not likely to be the last, judicial proceeding designed to help define the relations of different departments toward each other. It is our purpose merely to decide the present controversy, but, in so doing, it is proper to state a few broad principles, which may save the necessity for similar inquiries relating to other branches than those herein involved.
*616 The office of director of highways and public-works is, in a limited sense, a constitutional office by reason of embracing the duties which formerly devolved upon the superintendent of public works, which was and is a constitutional office. The present controversy is not complicated by that fact, however, because the highways were never regarded as a part of the public works, within the purview of that provision of the Constitution.
This controversy is, however, complicated by the fact that Sections 1178 to 1231-7, inclusive, General Code, constitute a complete codification of statutes for the organization and conduct of the state highway department. It is not necessary to refer at length to the provisions of those statutes, or to make any comment thereon further than to state that if the contentions of this defendant are sound throughout there would be serious conflict between the provisions of those statutes and certain provisions of the Administrative Code.
The conclusions we have reached in this controversy, as will hereinafter be stated, will entirely obviate that difficulty. Reduced to its last analysis, this controversy turns upon the proper construction of Sections 154-28, 154-29, 154-30, and 154-40, General Code (109 Ohio Laws, 112, 113, 118). The following portions are all that it will be necessary to quote in stating the reasons for the conclusions we have reached:
“Section 154-28. The department of finance shall have power to exercise control over the financial transactions of all departments, offices and institutions, excepting the judicial and legislative departments, as follows: # * * .
*617 ‘‘ (2) By prescribing and requiring uniform order and invoice forms and forms for financial reports and statements, and by requiring financial reports and statements.
“(3) By requiring itemized statements of expenditures proposed for any specified future period to be submitted to the department, and by approving or disapproving all or any part of such proposed expenditures.
“(4) By requiring orders, invoices, claims, vouchers or pay rolls to be submitted to the department, where such submission is prescribed by law or where the Governor shall deem such submission necessary, and by approving or disapproving such orders, invoices, claims, vouchers or payrolls. # * *
“(6) By prescribing the manner of certifying that funds are available and adequate to meet contracts and obligations. * * *
“Section 154-29. As used in Section 154-28 of the General Code:
“ ‘Order’ means a copy of a contract or a statement of the nature of a contemplated expenditure, a description of the property or commodity to be purchased or service to be performed, other than services of officers and regular employes of the state, and per diem of the National Guard, and the total sum of the expenditure to be made therefor if the same is fixed and ascertained, otherwise the estimated sum thereof. * * *
“All orders and invoices shall specify the appropriation account from which they are payable.
“Section 154-30. If any requirement of the department of finance respecting the submission of statements of proposed expenditures, or orders, in *618 voices, claims, vouchers or pay rolls is not complied with, or if any statement of proposed expenditure, or any order, invoice, claim, voucher or pay roll is submitted to and disapproved in whole or in part by the department of finance, the department shall have authority to notify the auditor of state thereof, and such auditor shall not issue any warrants on the treasury in payment of such expenditure, claim or voucher. * * #
“Section 154-40. The department of highways and public works shall have all powers and perform all duties vested by law in the superintendent of public works, the state highway commissioner, the chief highway engineer, and the state building commission. * * #”
By reference to Section 154-28, above quoted, it will be seen that the director of finance has control over “financial transactions,” and by reference to Sections 154-40 and 154-41, in connection with other statutes in pari materia, it is equally plain that the director of highways and public works has control over the construction and maintenance of state highways. It is, of course, very necessary, in making and executing contracts involving the expenditure of money, not only that the money be provided, but also that it be properly expended and accounted for. All of these matters, technically speaking, are financial transactions, but it does not follow that all financial transactions are under the control of the director of finance, and this is made entirely clear by the first sentence of Section 154-28, where an exception is made of the financial transactions of the judicial and legislative departments. All of the functions of the department of finance and all of the duties of the *619 director of finance are defined in Sections 154-28 to 154-38, inclusive, General Code, and nowhere in those sections does it appear that there is any interference by the department of finance with the duties and functions of the auditor of state and the treasurer of state. A careful reading of those sections makes it clear that the general duties of the director of finance relate to the subjects of account-ing, auditing and supervising public expenditures. An examination of Sections 154-40 and 154-41, and all of the sections of the General Code relating to the organization and conduct of the state highway department, beginning with Section 1178 and ending with Section 1231-7, shows that those sections as clearly relate to the construction and maintenance of public improvements. While performance of the functions of both of those departments is necessary in the orderly administrative processes of government, the best evidence of the legislative intent that those functions should be regarded as separate and distinct from each other is found in the fact that they were placed in separate and distinct departments, and each of those departments placed in charge of separate and distinct responsible functionaries.
Ir, is true that the department of finance is first named, and it may be conceded that none of the other departments ranks greater in importance, yet it does not follow that its importance is such as to overshadow all the others and to completely reduce them to a state of impotence. If any illustration is necessary to show that such power and authority in the director of finance as claimed in this case, if applied to all the other administrative branches of *620 the state government, would completely submerge the other branches and put it within the power of the director of finance to completely defeat and destroy the usefulness of the other branches, that illustration is found in the facts of the present controversy.
We shall not attempt in this proceeding to define the duties and the limitations of the director of finance in his relations to the directors of the other departments, but we do find it necessary and do not hesitate to say that his duties do not reach even in the remotest degree to a control of the policies of the department of highways and public works.
While the Administrative Code has not attempted to define the technical qualifications of the director of finance, it will be readily conceded that the duties devolved upon him by that Code require the training of a banker and an accountant. The Legislature has, however, clearly recognized the fact that the technical qualifications of the state highway engineer, one of the offices created in the department of highways and public works, shall be those of a competent civil engineer, with at least five years ’ experience in the construction and maintenance of highways. It would be little short of absurdity to require this skilled knowledge, training and experience in the highway department, if the policy of the highway department were entirely subject to the control of the finance department.
Another reason for denying to the finance department power and authority to control the policies of the highway department is found in the fact that all the administrative branches are a part of the executive power of the state, and the first sentence of the *621 Administrative Code recognizes the supreme executive power of the Governor of the state in all administrative matters as follows:
“Section 154-1. In order that the Governor may exercise the supreme executive power of the state vested in him by the Constitution and adequately perform his constitutional duty to see that the laws are faithfully executed, the administrative functions of the state are organized as provided in this chapter.”
It is therefore more reasonable to conclude that the Governor is supreme over all the departments? in so far as is provided by law, and that each of the departments has its own special functions; the essential policies of each being separate and distinct and free from control of the others.
Before this conclusion can be finally reached? it is necessary to dispose of some of the claims of the Attorney General. By reference to paragraph 4, Section 154-28, above quoted, it will be found that the director of finance has power to require orders to be submitted to him, first, as may be prescribed by law, and, second, where the Governor shall deem such submission necessary. It is admitted as to the first of those powers that no submissions have been “prescribed by law.” As to the second it is admitted by the well-pleaded allegations of the petition that the Governor had not made any executive order declaring submissions “necessary” until long after this contract was ready for signature, and two days before the director of finance refused his approval. Paragraph 4 of that section can have no reasonable relation to the contracts of the state highway department unless the term “orders” in that *622 paragraph can be held to have application to such contracts. The basis of the claim of the Attorney General is that the term “order” is so defined in Section 154-29. The definition of the word “order,” as found in Section 154-29, was not intended to be a definition of that word as it appears throughout the Administrative Code, because we find that it was only intended to be defined as the same is used in Section 154-28, and the word “orders” is found only once in Section 154-28, to-wit, in paragraph 4. A careful reading of the entire definition of the word “orders” hereinbefore quoted convinces that it was not intended to apply it to the contracts .of the highway department. If that had been the legislative intent it would have been stated “order means a contract,” whereas it is found in the definition that “order means a copy of a contract,” etc-. Surely our lawmakers spoke advisedly in drawing a distinction between a contract and a copy of a contract. All of the provisions of Section 154-28 relate to the subject of accounting and auditing. It Is easily seen that a copy of a contract should properly be submitted to the accounting and auditing department, and it is difficult to see how there could be any proper system of auditing and accounting without the submission of copies of all contracts involving expenditure of money through the department of finance. It would be a strained interpretation of Section 154-29 which would hold the submission of a copy of a contract to be the same thing as a submission for approval of the contract itself. Having in mind the vital necessity of maintaining the independence of the several departments in all matters of policy, and having in mind that Section. *623 154-28 relates to auditing and accounting, there is no difficulty in reaching the conclusion that “order” means just what it says, to-wit, a copy of a contract and not the contract itself.
It has further been urged, however, by the Attorney General, that it is impossible to carry out the provisions of Section 154-30 and enable the director of finance to effectively impose the penalties therein provided without giving the director of finance control over the policies of the director of highways and public works. The argument of the Attorney General, however, on this point, rests entirely upon the claim that the word “orders,” appearing in several placés in Section 154-30, has the same definition as given in Section 154-29. This entire argument falls to the ground when it is pointed out that the definition of the term “order” only has application to its use in Section 154-28.
We have therefore reached the conclusion that the duties of the director of finance, in the relations of that department to the department of highways, do not begin until a valid obligation has been entered into by the director of highways. It appearing by the allegations of the petition that all preliminary statutory requirements have been faithfully followed, it was the duty of the director of highways and public works to execute the contract. The petition therefore states a good cause of action, and the demurrer will be overruled.
In disposing of this demurrer we will not attempt to decide what state of facts might constitute a defense to the allegations of this petition, leaving such questions to be determined upon the merits of any answer which defendant may desire to file. In view *624 of the importance of this matter to the state and to the contractor hut a short time should be allowed for answer. If desired, the defendant may have leave to answer in five days.

Demurrer overruled.

Bobinson, Jones, Matthias, Day and Allen, JJ., concur.
Wanamaker, J., not participating.